In the Matter of Albert M.
DAVIDSON, Debtor.

In the Matter of Clarence S.
DICK, Debtor.

FLAGSHIP BANK OF TAMPA,
Plaintiff,

v.

Albert M. DAVIDSON and Clarence S.
Dick, Defendants.

Bankruptcy Nos. 80–213 C, 80–140 C.

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

Sept. 15, 1980.

Malka Isaak, Tampa, Fla., for plaintiff.

Robert Goldhagen, Tampa, Fla., for debtors.

---

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Bankruptcy Judge.

THESE ARE two closely inter–related contested discharge proceedings, although not consolidated, both were instituted by the same Plaintiff, Flagship Bank of Tampa (the Bank) and involving two Debtors not related, but closely connected in the past.

The matter under consideration is the dischargeability of a joint debt owed by both Debtors, Davidson and Dick, a debt which is represented by a promissory note signed by both of them in connection with a loan obtained by them from the Bank.

The claim of non–dischargeability is based on § 523(a)(2) of the Bankruptcy Code and according to the Bank, the debt owed to the Bank represents a liability created by these Debtors through submission of a materially false financial statement with the requisite specific intent to defraud. The Bank, therefore, contends that the debt

owed should be excluded from the overall protective provisions of the bankruptcy discharge. The underlying undisputed facts may be summarized as follows:

Mr. Davidson and Mr. Dick were, at the time pertinent to this loan transaction, general partners of a limited partnership known as "Davidson and Dick Ltd.". They were also principals of a corporation known as "South Lake East, Inc." Although both ventures were involved in real estate development, the partnership concentrated heavily in commercial land projects while the corporation was involved primarily in government subsidized building projects.

The facts also reveal that both Mr. Davidson and Mr. Dick have extensive business and finance backgrounds, i. e. Mr. Davidson has been an executive vice–president and has served in other capacities with several large banks in the Tampa area, while Mr. Dick has been involved in land development for over 20 years, a business involving substantial bank loans in excess of a million dollars.

The record established at the final evidentiary hearing reflects that sometime in the spring of 1979, Mr. Davidson approached the Bank and explored the possibility of obtaining a loan in the amount of $10,000. He was told that while the Bank would not consider a loan to either the corporation or to the partnership, it would consider a personal loan to Davidson and Dick if each would submit a loan application and a financial statement and further, provided the documents checked out satisfactorily. The sequence of events that followed is a hotly disputed matter and is the crux of this controversy.

According to Mr. Davidson, he called the Bank on Friday, March 9, 1979 and inquired about the status of the loan. When told that the loan was approved, he was ready to close it that afternoon, but the Bank informed him that the loan could not be closed until the following Monday, March 12, 1979. Mr. Davidson claims he was then instructed that he was supposed to bring to the Bank on March 12, 1979, the required financial statements.

According to Mr. Davidson, he and Mr. Dick went to the Bank, as instructed, on Monday, March 12, 1979, and at that time gave the Bank's loan officer the two financial statements (Exh. # 1). Mr. Davidson explained the apparent discrepancy in the dates, that the financial statements themselves show as being signed, by stating that he signed his own statement on March 9, 1979 when he found out the loan was approved and thought it would be closed, while Mr. Dick signed his statement only after he brought it to the Bank on the date the loan was in fact closed, March 12, 1979. According to Mr. Davidson, the entire loan transaction lasted only about 15 minutes and that the loan officer showed little interest if any, in the financial statements.

As noted earlier, the two cases were heard at the same final evidentiary hearing and by stipulation of the parties, much of the testimony germane to both cases was heard in the Davidson case and stipulated to in the Dick case. It is important, however, to also note some of the testimony by Mr. Dick on his own behalf. According to Mr. Dick, who told basically the same story, Mr. Davidson was coordinating the entire transaction and in fact Mr. Dick never went to the Bank or met the loan officer, until the closing on March 12, 1979. Mr. Dick claimed he was led to believe that the only reason the Bank wanted his financial statement was to put it in its folders to have a complete file in case the Bank was later examined. Mr. Dick claimed that Mr. Davidson told him that the loan would be approved if the borrowers credit checked out with the credit bureau.

In contrast to the above, the loan officer of the Bank testified that he may have received the financial statements requested, earlier than, but not later than, Friday, March 9, 1979. On the same date, he requested the Bank's credit department to conduct a credit check on both Mr. Davidson and Mr. Dick, and having received a favorable report from the credit bureau, reviewed the financial statements of both debtors and then in a telephone communication, told Mr. Davidson that the loan was

approved, but could not be finalized until the following Monday, March 12, 1979. The Bank officer's testimony also reflected that he used the financial statements to obtain the borrower's names and local addresses needed to run the credit bureau check. Counsel for the debtors pointed out, however, that such information could be gathered from a local phone book and, of course, it could have been obtained by Mr. Davidson.

The record reveals that the credit report furnished to the Bank by the Credit Bureau was limited to a list of charge account balances, credit card obligations and judgments of record, but did not include any bank loans made to these debtors.

There is no question that neither Mr. Davidson nor Mr. Dick paid anything on the principal obligation and are still indebted to the Bank in the amount of $10,000 and $843 interest for a total amount of $10,843. It is equally without serious dispute that both financial statements were seriously and materially false in the following respects. Mr. Davidson's financial statement failed to disclose more than a quarter of a million dollars in direct or contingent obligations owed to numerous banks. Mr. Dick's financial statement was equally false and misleading, if not more so, because in addition to Mr. Dick's failure to reveal various obligations to numerous banks, a total in excess of one–half million dollars, he also failed to disclose, even though the form called for the disclosure of prior bankruptcy, he failed to state that he had obtained two prior discharges in bankruptcy, one in 1954 and the other in 1964.

In light of the foregoing, there is hardly any question that both the financial statements were materially false and considering the background of both Debtors, it is clear that they both knew the significance and the importance of accuracy of financial statements submitted by prospective borrowers to a lender; that they both knew that a lender generally acts on the information contained in the financial statements; and that they submitted the statements with the specific intent to mislead the lend-

er, i. e. both knew if they had fully disclosed the true extent of their respective liabilities, they would not have obtained the loan.

Both the Debtors contend, however, that in spite of these damaging undisputed facts, the Bank's claim of non–dischargeability must be rejected because the Bank failed to carry its burden of proof on the element of reliance on the financial statements, an element indispensable to a claim of non–dischargeability under § 523(a)(2).

In support of this defense, the Debtors urge that the loan was approved on Friday, before the loan officer of the Bank had ever seen the two financial statements, thus, the Bank could not have relied on the financial statements in granting this particular loan.

Section 523(a)(2)(B) of the Bankruptcy Code provides in pertinent part as follows:

"(a) A discharge under § 727, § 1141 or § 1328(b) of this title does not discharge an individual debtor from any debt–

(2) for obtaining money, property, services or an extension, renewal, or refinance of credit by–

(B) use of a statement in writing–

(i) that is materially false; (ii) respecting the debtor's .... financial condition; (iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services or credit *reasonably relied* (emphasis supplied); and (iv) that the debtor caused to be made or published with the intent to deceive;"

Thus, in order to sustain an action under § 523(a)(2)(B) each element of the Bank's prima facie case must be established, i. e. elements (i)–(iv). There is no question, but that the only element in dispute is whether the Bank could have *reasonably relied* on both or even one of the Debtor's false financial statements.

According to *House Report No. 95–595, 95th Cong. 1st Sess.,* (1977) at 364, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6320, this Section provides "the creditor must not only have relied on a false statement in writing, the reliance must have been reasonable. This *codifies case law construing this provision.*" (emphasis supplied). Thus,

it is clear that reasonable reliance is actually not an additional requirement, but merely a recognition or a reaffirmation of what has been established by courts under pre–Code law.

Pursuant to Bankruptcy Rule 407 (1973) the burden of proof rests with the party asserting the claim of non–dischargeability. This Court, however, sitting as a trier of fact in this case, may consider matters affecting credibility of the parties who took the stand in their own behalf. The parties' demeanor on the stand combined with the evasive and oft incomplete answers of Mr. Davidson and Mr. Dick may be considered in addition to the Bank's own case in chief to determine whether the Bank carried its burden of proof.

With respect to the issue of when the Bank received the financial statements in question, this Court is satisfied that based on the record established at the final evidentiary hearing, the Bank had possession of both Mr. Davidson's and Mr. Dick's statements on or prior to March 9, 1979. The contention of the Debtors that the financial statements submitted by them was nothing but a formality and they would have received the money lent merely on the strength of the Credit Bureau check is not supported by this record and is rejected.

With regard to whether the Bank officer could have reasonably relied on an unsigned statement of a person whom he never saw and had no previous dealings with and which was in fact a copy of a statement dated December 31, 1978, it is clear that the Bank would have acted unreasonable if it had closed the loan without even seeing Mr. Dick and leaving the statement unsigned. The evidence, however, shows that although Mr. Dick did not sign his financial statement until the 12th of March, he did sign it on that date in the presence of the loan officer. Further, it appears that the loan officer questioned Mr. Dick, asking him specifically if the December 31, 1978 financial statement had any present material changes. Although not relevant to this controversy, it is clear that the financial statement signed by Mr. Dick on the 12th

was a copy of the very same statement presented to over twenty banks in the Tampa Bay area to obtain loans.

Thus, the Bank officer did procure the Debtor's signature and did actually meet the Debtor prior to the time the loan was closed. In this Court's opinion, those steps taken were sufficient to permit reasonable reliance to be inferred, and were also sufficient to remove the taint of unreasonableness, if any, created by the tentative approval on March 9, 1979 of the loan based on an unsigned statement of a person the loan officer had never seen.

In light of the foregoing, this Court is satisfied that considering the record as a whole, the Bank has sustained its burden with regard to each and every element of its prima facie case. Accordingly, it is incumbent upon this Court to rule in favor of non–dischargeability.

A separate final judgment will be entered in accordance with the foregoing.