In re Richard Daniel JOHNSON d/b/a Johnson Construction Co., Debtor.

N. J. GENDRON LUMBER CO. d/b/a Gendron's, Plaintiff,

v.

Richard Daniel JOHNSON, Defendant.

Bankruptcy No. 279–00645.
Adv. No. 279–0001.

United States Bankruptcy Court,
D. Maine.

June 12, 1981.

Matthew S. Goldfarb, Portland, Me., for plaintiff.

Charles Doleac, Portsmouth, N.H., for defendant.

## MEMORANDUM DECISION

FREDERICK A. JOHNSON, Bankruptcy Judge.

In this proceeding the Plaintiff, a dealer in building materials, seeks a determination that its claim against the Debtor in the amount of $8,846.89, is nondischargeable.

The Debtor, a small building contractor, had been engaged in the construction business for two years before he commenced doing business with the Plaintiff. During September of 1977 he was contacted by one of the Plaintiff's salesmen on a job site. The Plaintiff's salesman, who had just started his employment with the Plaintiff, was acquainted with the Debtor and his construction company through his previous employment as a salesman for another supplier in the area. After a short discussion with the Plaintiff's salesman the Debtor agreed to purchase materials from the Plaintiff. The salesman furnished a credit application form which was filled out by the Debtor on October 11, 1977 and returned to the salesman.

On the credit application the Debtor stated that he owned an 8 acre subdivision on the Bartlett Road in Kittery Point which was "paid for" and a 3–unit apartment house upon which the Portsmouth Savings Bank held a mortgage. The form did not have a space for asset values and such values were not listed by the Debtor; nor did the form provide a space for information regarding the extent to which assets were subject to security interests.

The credit application was reviewed by the President of the Plaintiff company on October 28, 1977. After having checked with creditors listed therein and the local credit bureau the Plaintiff's President approved the Debtor for credit with a limit of $3,000.

The Debtor purchased materials from the Plaintiff on credit from October of 1977 until February of 1979, at which time the Plaintiff terminated his credit.

The credit application signed by the Debtor was false because, during August of 1977 the Debtor had conveyed to his mother the 3–unit apartment house and all of his interest in the 8 acre subdivision. In addition, the subdivision was subject to a mortgage held by Portsmouth Savings Bank.

The Plaintiff Creditor argues that because the Debtor falsely reported in the credit application that he owned the 8 acre subdivision and the 3–unit apartment house its claim is not dischargeable in bankruptcy.

## DISCUSSION

Section 523 of the Bankruptcy Code (11 U.S.C. § 523) provides:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

.    .    .    .    .

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

.    .    .    .    .

(B) use of a statement in writing—
(i) that is materially false;
(ii) respecting the debtor's . . . financial condition;
(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive;

Each of the elements of Section 523(a)(2)(B) must be proved by clear and convincing evidence. *In re Lyon*, 3 C.B. C.2d 644, 648; 8 B.R. 152 (Bkrtcy.Ct., D.Me. 1981).

In this proceeding Plaintiff has failed to establish that it reasonably relied upon the

Debtor's financial statement or that the financial statement was made by the Debtor with the intent to deceive.

 In the first place, the Debtor did not seek out the Plaintiff for an extension of credit. The Plaintiff, through its salesman, contacted the Debtor for the purpose of inducing the Debtor to do business with the Plaintiff. The completion of the credit application was merely incidental to the Plaintiff's solicitation of the Debtor's business and was treated perfunctorily by the Debtor.[1]

Secondly, the credit application, which is a form furnished by the Plaintiff, is incomplete in several details. There is no provision on the form for assets values or the extent to which assets are encumbered. The Plaintiff cannot seriously claim that it reasonably relied upon the Plaintiff's ownership of the 8–acre subdivision or the 3–unit apartment house when there is no indication of their value or of the Debtor's equity therein.

In addition, on the issue of reasonable reliance, the Plaintiff, a supplier of construction materials, knew or should have known that the subdivision was under development by the Debtor and would eventually be sold. Furthermore, the Plaintiff and the Debtor did business for one and a half years, during which time the Debtor purchased on credit approximately $90,000 worth of materials. The Court finds that the Plaintiff relied more on the Debtor's credit history with the Plaintiff, at least after the first few months, than it did on the credit application.

On the issue of the Debtor's intent the Court finds that although the subdivision and the apartment house were conveyed to the Debtor's mother during the summer of 1977, the Debtor honestly believed that these properties were readily available to him, if needed, in support of his construction business. The Debtor, his parents and the rest of his family were a very close unit and assisted each other in their business affairs.[2]

The Plaintiff's business records reveal that the Debtor continued to pay on his account up to the time that the parties ceased doing business. During January and February of 1979 the Debtor's general account was reduced from $10,500.96 to $4,598.09.[3]

Upon all of the evidence, the Court is not convinced that the Debtor obtained credit from this Plaintiff by use of a materially false statement in writing respecting his financial condition, with the intent to deceive, or that the statement was reasonably relied upon by the Plaintiff within the intent of Section 523(a)(2)(B) of the Bankruptcy Code.

An appropriate order will be entered.

---

1. The Court, by this decision, does not mean to condone such perfunctory treatment of credit applications by debtors. Under different facts this Court has ruled that such action can result in a nondischargeable debt. *See In re Huth*, BK–75–308/9, 2/13/76.

2. Because of this close family relationship the Court, previous to this proceeding, ordered an examination of the Debtor and his family in order to determine whether or not the family was engaged in a joint venture or partnership.

3. The Plaintiff carried four separate accounts for this Debtor; a General Account, a Pick-up Account, a Kitchen Account and a Plans Account.