In re Albert TOMEI, Debtor.

LINCOLN FIRST BANK, N. A., Plaintiff,

v.

Albert TOMEI, Defendant.

Bankruptcy Nos. 80–21294, 80–2233A.

United States Bankruptcy Court, W. D. New York.

July 17, 1981.

Nixon, Hargrave, Devans & Doyle by D. Bruce Kratz, Rochester, N. Y., for plaintiff.

Michael P. Wojick, Rochester, N. Y., for defendant.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

An action has been commenced by the plaintiff, Lincoln First Bank, hereinafter referred to as "Lincoln", against the debtor to have his debt to Lincoln declared nondischargeable on the basis of false financial statements. The debtor defaulted on his pretrial appearance and the plaintiff was granted a default but was required to submit proof. The debtor after his default asked to submit briefs in regard to the question of the false financial statements and their effects. This was permitted.

From the default hearing, it appears that Mr. Tomei was a long-time customer of the Gates branch of Lincoln and in April, May and June of 1977, a corporation in which he owned 100% received three loans from Lincoln which totaled $20,000. Mr. Tomei, the debtor, guaranteed payment of the debt. In April of 1978, Tomei gave Lincoln financial statements for himself individually and for his corporation. There seems to be no question that in both these statements Mr. Tomei made material misstatements by listing real property as owned by the corporation when, in fact, all the corporation had was an option to purchase.

On April 24, 1978, the bank through its manager, Mr. Corlew, renewed the note for $20,000. It was again renewed in July of 1978 and October of 1978. Mr. Corlew stated at the hearing that he had renewed the note in April, July and October of 1978 based upon Tomei's financial statement, conversations which he had had with Mr. Tomei regarding the progress of the subdivision on the realty which was listed in the financial statements and that Mr. Tomei had been a borrowing customer at Lincoln for many years and Mr. Tomei in his dealings with Lincoln had always borrowed and repaid as agreed. Mr. Tomei in July of 1978 had made the interest payment due on the April 1978 renewal on time.

11 U.S.C. § 523(a)(2)(B) provides in part as follows:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(B) use of a statement in writing—

    1.  that is materially false;

    2.  respecting the debtor's or an insider's financial condition;

    3.  on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

    4.  that the debtor caused to be made or published with intent to deceive;

The leading case in interpreting the predecessor to 11 U.S.C. § 523(a)(2)(B) in

this circuit is *Danns v. Household Finance Corp.*, 558 F.2d 114 (2nd Cir., 1977), it says at page 116:

> We think the proper construction of § 17a(2) is unmistakable. The language of § 17a(2) bars discharge only of "liabilities for obtaining" extensions of renewals of credit "in reliance upon a materially false statement"; this strongly implies that the creditor should be entitled to bar discharge only of that portion of his loan as was obtained fraudulently. There is nothing in the legislative history of the 1960 amendments to indicate a congressional intent that a bankrupt should be penalized for more than simply the consequences of his fraud. Nor does it seem equitable for a bankrupt to be deprived of discharge on all his indebtedness to a particular creditor simply because a small portion of it was procured dishonestly. Accordingly, since exceptions to discharge are to be narrowly construed, see *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287 [289], 59 L.Ed. 717 (1915), we read § 17a(2) as barring discharge only to the extent that the creditor could actually have relied upon the debtor's misrepresentation.

The burden is on the creditor to prove the exception.

In this particular case, the $20,000 was obtained by the corporation in 1977. In 1978, the financial statements were issued and filed with Lincoln. The bank officer in discussing his reliance upon the financial statements indicated that he had renewed the note three times in 1978, in part, based upon the statements but, and he seemed to emphasize this, more upon the past dealings of Mr. Tomei with Lincoln. As a result, Lincoln has failed to prove the exception to the doctrine set forth in *Danns* and since there was no fresh cash received at the time, the note was renewed and the debts are dischargeable and it is so ordered. (For similar results, *see In re Barrett*, Bkrtcy., 2 B.R. 296 and *In re Francis J. Keeley*, Bkrtcy., 3 B.R. 249).