**In re Albert TOMEI, Debtor.**

**LINCOLN FIRST BANK, N.A., Plaintiff,**

v.

**Albert TOMEI, Defendant.**

**No. CIV–81–888B(E).**

United States District Court,
W.D. New York.

Oct. 19, 1982.

D. Bruce Kratz, Rochester, N.Y., for plaintiff.

Michael J. Wojick, Rochester, N.Y., for defendant.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

Lincoln First Bank, N.A. ("Lincoln") appeals from an order of the Bankruptcy Court which directed that an obligation owing from the debtor to Lincoln is dischargeable. Lincoln claims that the debt is not dischargeable because it was obtained by use of a false financial statement. *See,* 11 U.S.C. § 523(a)(2)(B). For the reasons set out below, I am reversing the Bankruptcy Court's order. 12 B.R. 592 (Bkrtcy.1981).

The debtor is the President and sole shareholder of Oakridge Development Corp., Inc. ("Oakridge"), a corporation involved in the construction of residential houses. In the spring of 1977 Oakridge received three loans totalling $20,000 from Lincoln in connection with a proposed housing development. The loans were personally guaranteed by the debtor and were con-

solidated and renewed in April, 1978. At the time of such refinancing, the debtor submitted his and Oakridge's financial statements. The statements indicated that Oakridge owned parcels of land denominated as the "Gates subdivision" worth $132,-500. In reality, Oakridge merely possessed an option to purchase said land.[1] Lincoln's decision to renew the loans to Oakridge was at least partially motivated by the false representation that Oakridge owned the land in question. The consolidated loan was again renewed in July and October of 1978. Oakridge subsequently defaulted and Lincoln obtained a default judgment on the loan against both the debtor and Oakridge.

A discharge generally acts to discharge the debtor from all debts arising before the date of such relief, "except as provided in section 523 of [Title 11 of the United States Code]." 11 U.S.C. § 727(b). Section 523 provides that a discharge does not affect any debt:

"(2) for obtaining money * * * or an extension, renewal, or refinance of credit, by—

(A) * * *

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's * * * financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money * * * or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive * * *." 11 U.S.C. § 523(a)(2)(B).

In the present case, the Bankruptcy Judge ruled that Lincoln had failed to prove that the debt owing to it was not dischargeable because the financial misrepresentations were not the sole or primary motivation for the renewal of the loans to Oakridge and because Oakridge did not receive any new cash at the time of the renewals.

---

1. The misrepresentation had the effect of giving the appearance that Oakridge had a net worth of $21,341.40, whereas it actually had a substantial negative net worth. Because the debtor's personal financial statement listed Oakridge's net worth as an asset of the debtor, the misrepresentation also caused the debtor's personal net worth to be overstated.

■ It is established that partial reliance on a false representation in connection with an extension of credit is an adequate basis to prevent discharge of the underlying debt. *Bazemore v. Stehling,* 396 F.2d 701, 703 (5th Cir.1968); *Wylie v. Ward,* 292 F.2d 590, 592, n. 5 (9th Cir.1961); *Rogers v. Gardner,* 226 F.2d 864, 867 (9th Cir. 1955); *Banks v. Siegel,* 181 F.2d 309, 310 (4th Cir.1950). "It is sufficient if [the false statement] was a substantial factor in causing the [extension of credit]." *In re Clancy,* 279 F.Supp. 820, 822 (D.Colo.1968), *aff'd,* 408 F.2d 899 (10th Cir.), *cert. denied,* 396 U.S. 958, 90 S.Ct. 430, 24 L.Ed.2d 422 (1969). Credit decisions are based on a multitude of considerations and it is highly doubtful that any one factor would ever be conclusive. Thus, the fact that Lincoln relied on its past course of dealings with the debtor as well as the misrepresentation concerning Oakridge's purported ownership of the Gates subdivision does not preclude a finding that the debt was nondischargeable. There seems to be no question that the misrepresentation was a substantial factor in causing Lincoln to agree to refinance the loans. Indeed, the branch manager who handled the transaction for Lincoln testified that he would have referred the loans to the bank's attorneys for collection if the financial statements had not mentioned the Gates subdivision. Such testimony establishes sufficient reliance to prevent discharge.

■ Moreover, the fact that Oakridge received no new cash at the time of the refinancing is unavailing to the debtor in this proceeding. Section 523 specifically provides that a debt for "money * * * *or an extension, renewal, or refinance of credit*" (emphasis added) obtained through use of a false financial statement is not dischargeable. This language clearly contemplates that a false representation in connection with a renewal or extension of credit, even in the absence of the advancement of additional cash, may render the underlying debt nondischargeable.

*Danns v. Household Finance Corp.,* 558 F.2d 114 (2d Cir.1977), is not to the contrary. In that case, the debtor had been indebted to a loan company for some $2,019. He then sought to obtain an additional loan of $483 and misstated the amount of obligations he owed to other creditors. Because section 352(b) of New York's Banking Law prohibits a small loan company from making more than one loan to the same borrower at the same time, the loan company consolidated the loans and the debtor signed a new note for $3,261, an amount which included finance charges. The court held that only $483 (plus finance charges on such amount) was a nondischargeable debt.

The Bankruptcy Judge appears to have construed *Danns* to mean that a debt renewed in consideration of false financial statements is nondischargeable only to the extent that additional money is advanced to the debtor. *Danns* should not, however, be construed so broadly. The court specifically noted that "there was no evidence that the original loan [for $2,019] was renewed in reliance on the false representation." *Danns v. Household Finance Corp., supra,* at 116. Rather, the original loan was renewed only because New York state law required that it be consolidated with the new loan of $483. *Ibid.* In this sense, there was no "true extension of the original loan." *Ibid.* Thus, *Danns* holds only that there must be actual detrimental reliance on the financial misrepresentations in order to render a renewed or refinanced debt nondischargeable but does not require that an additional cash advance be involved in the refinance.

This narrow interpretation of *Danns* is supported by the legislative history of section 523. As stated by Representative Don Edwards:

"In many cases, a creditor is required by state law to refinance existing credit on which there has been no default. If the creditor does not forfeit remedies or otherwise rely to his detriment on a false financial statement with respect to existing credit, then an extension, renewal, or refinancing of such credit is nondischargeable only to the extent of the new money advanced; *on the other hand, if*

*an existing loan is in default or the creditor otherwise reasonably relies to his detriment on a false financial statement with regard to an existing loan, then the entire debt is nondischargeable* under section 523(a)(2)(B). This codifies the reasoning expressed by the second circuit [sic] in [*Danns*]." (Emphasis added.) Statement by the Hon. Don Edwards, September 28, 1978, reprinted in U.S. Code Congressional and Administrative News, 95th Cong., 2d Sess., 5787, 6436, at 6453 (1978).

The present case is clearly distinguishable from *Danns.* Patently, Lincoln's renewal of the loans to Oakridge was *bona fide.* Certainly, Lincoln was not required to refinance the loans as the lender in *Danns* had been. Moreover, the branch manager testified at the hearing below that he would have referred the loans to Lincoln's attorneys for collection had there been no misrepresentation concerning Oakridge's ownership of the Gates subdivision. Lincoln's forebearance based on the misrepresentation constitutes detrimental reliance sufficient to satisfy section 523.

Thus, the Bankruptcy Court's conclusion that the debtor's obligations to Lincoln are dischargeable was premised upon legal error. Nevertheless, the case must be remanded to the Bankruptcy Court for a determination whether the misrepresentation was made by the debtor "with intent to deceive." 11 U.S.C. § 523(a)(2)(B)(iv). The Bankruptcy Judge made no previous express finding on this question, apparently because his decision was premised upon other grounds.

Based on the foregoing discussion, the Bankruptcy Court's order is hereby ORDERED reversed. It is further ORDERED that this case is remanded to the Bankruptcy Court for a determination whether the misrepresentation was made with the intent to deceive. If the Bankruptcy Court finds that the misrepresentation was committed with such intent, it shall enter judgment in favor of Lincoln directing that the debt in question is not dischargeable.