In re Donald L. COUGHLIN,
Debtor-Appellant.

First National Bank of Boston, Appellee.

Bankruptcy Appeal No. 82–9051.

United States Bankruptcy Appellate Panels
for the First Circuit.

Argued Jan. 19, 1983.

Decided March 8, 1983.

Richard J. Cohen, Braunstein & Cohen, Hyannis, Mass., for debtor-appellant.

Richard A. Kaye, and Bertin C. Emmons, Kaye, Fialkow, Richmond & Rothstein, Boston, Mass., for appellee.

Before VOTOLATO, Chief Judge, and JOHNSON and GOODMAN, Bankruptcy Judges.

JOHNSON, Bankruptcy Judge.

The appellee, First National Bank of Boston, sought a declaration from the bankruptcy court that its claim against the debtor, Donald Coughlin, was nondischargeable under section 523(a)(2)(B) of the Bankruptcy Code. 11 U.S.C.A. § 523(a)(2)(B) (1979). The bankruptcy court entered judgment for First National, and Coughlin appealed. We affirm.

From the record of the trial before the bankruptcy judge it appears that since 1978 First National has used Yegen Air Acceptance Corporation to find acceptable aircraft loans. Through its relationships with aircraft dealers, Yegen locates and contacts prospective aircraft purchasers and attempts to interest them in obtaining financing through First National. If the buyer is interested, Yegen puts together a package of documents, including a loan application, information on the aircraft, financial statements, tax returns, and credit reports, for submission to First National. In addition, Yegen performs independent credit checks on the information supplied by the customer. Included with the loan package submitted to the bank is Yegen's recommendation on the loan. First National follows Yegen's recommendations about 80% of the time.

Upon receiving a completed loan package from Yegen, First National reviews it for approval. The bank makes no independent inquiries but relies entirely on the information supplied by Yegen in making its decision. Nevertheless, the ultimate decision to grant or deny credit is made by the bank. First National considers the ability and willingness of the customer to pay to. be the most important factors in its decision to grant a loan; collateral is viewed as a secondary source of repayment. When the borrower is self-employed, as is the debtor in this proceeding, First National relies on tax returns and financial statements as evidence of ability to pay.

Coughlin is an educated and experienced businessman. From 1970 until 1981, he ran a moving and storage business. During that time, he began purchasing airplanes as tax shelters and leasing them to fixed base operators.

Sometime prior to July 1980, First National repossessed a Piper Aztec airplane and offered it for sale. The record is not clear as to when and how Yegen and Coughlin made contact. But, in any event, Coughlin expressed interest in purchasing the aircraft. Yegen prepared an application for secured credit in Coughlin's name to be submitted to First National. Financial information, including figures allegedly representing Coughlin's assets, liabilities, net worth, annual business income, and other annual income, appeared in the loan application. The figures were totally inaccurate. The application listed assets of $1,733,000, liabilities of $73,500, net worth of $1,659,500, annual business income of $65,000, and other annual income of $60,000. Coughlin's actual net worth in July 1980 was $50,000 to $60,000. Coughlin's genuine[1] 1979 income tax return, produced at trial, revealed adjusted gross income of $11,535, interest income of $19, and no dividend income. In 1978, Coughlin had adjusted gross income of $19,836, interest income of $50, and no dividend income.

The record does not reveal the source of the inaccurate financial figures. Coughlin stated that he did not participate in the preparation of the financial information and that he was never contacted by anyone from the bank or Yegen by letter, telephone, or in person prior to July 10, 1980. Although Yegen prepared the loan application, its employees testified that they had no recollection of the source of the figures.

On July 10, 1980, Yegen's representative presented Coughlin with a package of documents prepared by Yegen for review and signature. Included in the package were the application containing the false financial information, the note, the security agreement, and several documents concerning transfer and registration of title to the airplane. Coughlin testified that he signed the loan application without reading it. He did not sign the note and security agreement or accept the aircraft because a radio was missing.

First National received the loan application from Yegen on July 11 and approved the $125,000 loan on July 12. The bank relied upon the false financial information. It also had in its files an April 1979 loan application, prepared by Yegen and signed by Coughlin, which contained similarly false financial information. Finally, the bank reviewed the false 1978 and 1979 tax returns. The record does not reveal the source of these returns and they were not offered at the trial.

On August 1, 1980, Coughlin signed the note and security agreement and took possession of the aircraft. He subsequently defaulted on the loan. The bank repossessed and sold the aircraft, and the sale resulted in a deficiency of $62,822.32. Coughlin filed a chapter 7 petition on March 9, 1982, and the bank timely filed a complaint to determine dischargeability of the deficiency claim under section 523(a)(2)(B).

At the trial below Coughlin moved for a "directed verdict"[2] at the close of the bank's case. The bankruptcy judge declined to rule on the motion until the close of all of the evidence. He then denied the motion and rendered judgment on the merits for the bank.[3]

The issue on appeal is whether the bankruptcy court erred in finding that First National established all the elements of section 523(a)(2)(B). This panel "shall accept

---

1. First National had in its files unsigned and false 1978 and 1979 tax returns in Coughlin's name, which it received from Yegen.

2. We assume that counsel intended a motion to dismiss under Rule 41(b) of the Federal Rules of Civil Procedure.

3. The bankruptcy court's findings and conclusions were made from the bench and are included in the transcript, which is part of the record on appeal.

the bankruptcy judge's findings of fact unless they are clearly erroneous." Appellate Rule 16;[4] *see, e.g., In re Garland Corp.,* 6 B.R. 456, 460 (Bkrtcy. 1st Cir.1980). The trial court's findings are clearly erroneous when the reviewing court is " 'left with the definite and firm conviction that a mistake has been committed.' " *In re Searles Castle Enterprises, Inc.,* 17 B.R. 440, 442 (Bkrtcy. 1st Cir.1982) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)). In considering the exercise of the bankruptcy court's discretion, the reviewing court does not conduct a balancing test; "[i]f there is a sound reason for the decision of the [lower court], it does not matter that there are also sound reasons for the opposite result." *In re Boston & Maine Corp.,* 618 F.2d 137, 141 (1st Cir.1980). Using this standard, we conclude that the bankruptcy court's findings are not clearly erroneous.

■ In this proceeding, section 523(a)(2)(B)[5] required the bank[6] to prove six elements in order to obtain a finding of nondischargeability: 1) a debt for obtaining money, 2) by use of a statement in writing, 3) that is materially false, 4) respecting the debtor's financial condition, 5) on which the creditor reasonably relied, and 6) published by the debtor with intent to deceive. Each of these elements must be shown with clear and convincing evidence.[7] *See, e.g., Community Hospital of Roanoke Valley, Inc. v. Musser (In re Musser),* 24 B.R. 913, 918 (D.Ct.W.D.Va.1982); *First Safety Fund National Bank v. Valley (In re Valley),* 21 B.R. 674, 680 (Bkrtcy.D.Mass.1982); *N.J. Gendron Lumber Co. v. Johnson (In re Johnson),* 12 B.R. 46, 47 (Bkrtcy.D.Me.1981); *Guilmette v. People's Savings Bank (In re*

---

4. First Circuit Rules Governing Appeals from Bankruptcy Judges to Appellate Panels.

5. Section 523(a)(2)(B) provides:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

6. The burden of proof is on the plaintiff in dischargeability cases under Rule 407 of the Rules of Bankruptcy Procedure. *See, e.g., Pacific Finance Discount Co. v. Whiting (In re Whiting),* 10 B.R. 687, 689 (Bkrtcy.E.D.Pa. 1981).

7. In *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (civil commitment proceeding), the United States Supreme Court discussed the clear and convincing evidence standard of proof. The court pointed out that: [o]ne typical use of the standard is in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing by the defendant. The interests at stake in those cases are deemed to be more substantial than mere loss of money and some [courts] ac-

cordingly reduce the risk to the defendant of having his reputation tarnished erroneously by increasing the plaintiff's burden of proof. *Id.* at 424, 99 S.Ct. at 1808. Although the court did not specifically define the standard, it stated that requiring clear and convincing evidence informs "the factfinder that the proof must be greater than the preponderance of the evidence standard applicable to other categories of civil cases." *Id.* at 432–33, 99 S.Ct. at 1812.

Courts in six out of the twelve circuits have applied the clear and convincing evidence standard in section 523(a)(2)(B) dischargeability cases. *See N.J. Gendron Lumber Co. v. Johnson (In re Johnson),* 12 B.R. 46, 47 (Bkrtcy.D. Me.1981) (First Circuit); *Household Finance Corp. v. Callery (In re Callery),* 6 B.R. 527, 529 (Bkrtcy.S.D.N.Y.1980) (Second Circuit); *Beneficial Consumer Discount Co. v. Russell (In re Russell),* 18 B.R. 325, 327 (Bkrtcy.E.D.Pa.1982) (Third Circuit); *Nationwide Financial Corp. v. Dawson (In re Dawson),* 16 B.R. 70, 73 (Bkrtcy. E.D.Va.1981) (Fourth Circuit); *Keyes Co. v. Gunn (In re Gunn),* 23 B.R. 20, 22 (Bkrtcy.S.D. Fla.1982) (Fifth Circuit); *Miles Employee Federal Credit Union v. Griffin (In re Griffin),* 22 B.R. 821, 824 (Bkrtcy.S.D.Ohio 1982) (Sixth Circuit). We could find only one court that specifically applied a different evidentiary standard. *See Peoples Security Finance, Inc. v. Aldrich (In re Aldrich),* 16 B.R. 825 (Bkrtcy.W. D.Ky.1982). Although the *Aldrich* court considered use of the clear and convincing standard appropriate when applying section 523(a)(2)(A), it used the preponderance standard when considering evidence under section 523(a)(2)(B). *Id.* at 828–29.

*Guilmette),* 12 B.R. 799, 802 (Bkrtcy.D.R.I. 1981). It is not seriously disputed that First National has established elements one through four by clear and convincing evidence. The difficult question is whether the bank established intent to deceive and reasonable reliance. Questions concerning intent and reliance are questions of fact, and, thus, the bankruptcy court's findings on these issues are subject to appellate review under the clearly erroneous standard. *Anderson, Clayton & Co. v. Wingfield (In re Wingfield),* 15 B.R. 647, 649 (D.Ct.W.D.Okl. 1981).

■■■ We reject Coughlin's argument that the evidence does not support a finding of intent to deceive. Although a showing of unknowing inaccuracy is not enough to establish intent to deceive, *Genesis Leasing Corp. v. Mangham (In re Mangham),* 8 B.R. 222, 223 (Bkrtcy.S.D.Ohio 1981), actual knowledge of the falsity of the financial information is not required. *Waterbury Community Federal Credit Union v. Magnusson (In re Magnusson),* 14 B.R. 662, 669 (Bkrtcy.N.D.N.Y.1981). A creditor can establish intent to deceive by proving reckless indifference to, or reckless disregard of, the accuracy of the information in the financial statement by the debtor. *Id.; Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Kimberly (In re Kimberly),* 13 B.R. 145, 146 (Bkrtcy.S.D.Fla.1981). Courts may assume that debtors intend the natural consequences of their acts. *First Westside National Bank v. Voeller (In re Voeller),* 14 B.R. 857, 860 (Bkrtcy.D.Mont.1981). Intent to deceive is present when the debtor has "seen the financial statement and the errors were such that he knew or should have known of their falsity." *Modern Distributors, Inc. v. Gray (In re Gray),* 22 B.R. 676, 9 B.C.D. 661, 663 (Bkrtcy.W.D.Wis.1982); *accord, First Safety Fund National Bank v.*

*Valley (In re Valley),* 21 B.R. 674, 680 (Bkrtcy.D.Mass.1982).

■■■ Coughlin testified that he signed the July 1980 loan application, which contained the false financial information, without reading it. This is support for the bankruptcy court's finding that Coughlin acted with reckless indifference to the accuracy of the information in the application. The bankruptcy court's finding that Coughlin knew or should have known that the application contained false information, which would mislead the bank, is also supported by the record. The court below correctly considered Coughlin's business experience and his history of purchasing and leasing aircraft as a tax shelter device. *First Westside National Bank v. Voeller (In re Voeller),* 14 B.R. 857, 860–61 (Bkrtcy.D. Mont.1981); *Flagship Bank v. Davidson (In re Davidson),* 6 B.R. 159, 161 (Bkrtcy.M.D. Fla.1980). The bankruptcy court's finding that Coughlin intended to deceive First National is not clearly erroneous.[8]

■■ Finally, Coughlin asserts that First National did not rely on the false financial information. Courts generally agree that the creditor must show that it considered and relied on the actual financial statement in question. *Nationwide Financial Corp. v. Dawson (In re Dawson),* 16 B.R. 70, 73–74 (Bkrtcy.E.D.Va.1981). Courts have found that the reliance element of section 523(a)(2)(B) was missing when the evidence indicated that the creditor was relying solely on a previous loan repayment, *Waterbury Conn. Teachers Federal Credit Union v. Ciampi (In re Ciampi),* 14 B.R. 441, 443 (Bkrtcy.D.Conn.1981); the debtor's established credit rating, *First & Merchants National Bank v. Jones (In re Jones),* 3 B.R. 410, 413 (Bkrtcy.W.D.Va.1980); or on the pledged security, *First Westside National Bank v. Voeller (In re Voeller),* 14 B.R. 857,

---

**8.** Coughlin argues that the bankruptcy court erred in treating an April 1980 loan application, which was excluded during the hearing, as evidence of his intent to deceive. Presumably, Coughlin bases this assertion on the bankruptcy judge's use of the words "multiple" and "repeated" when referring to financial statements in his findings of fact. This assertion is

not grounds for reversal because the bankruptcy court had before it not only the July 1980 application but also a signed April 1979 loan application, which Coughlin admitted submitting to the bank. Thus, the bankruptcy court had before it multiple false financial statements.

861 (Bkrtcy.D.Mont.1981); or when the false financial information was submitted after the goods or services were provided. *Anderson, Clayton & Co. v. Wingfield (In re Wingfield),* 15 B.R. 647, 649–50 (D.Ct.W.D. Okl.1981); *see also Sample v. Harlan (In re Harlan),* 7 B.R. 83, 84 (Bkrtcy.D.Ariz.1980). Once reliance on the financial statement is established, most courts have held that a showing of partial reliance is sufficient: the creditor need not demonstrate that it was motivated solely by the false financial information. *Lincoln First Bank v. Tomei (In re Tomei),* 24 B.R. 204, 9 B.C.D. 1166, 1167 (D.Ct.W.D.N.Y.1982). *Contra Thomson-MacConnell Cadillac, Inc. v. Isaacs (In re Isaacs),* 15 B.R. 210, 210 (Bkrtcy.S.D.Ohio 1981) (financial statement must be "backbone of the issuance of credit"). All that is required is that the financial statement was a " 'contributory cause of the extension of credit.' " *American Bank & Trust v. Drewett (In re Drewett),* 13 B.R. 877, 880 (Bkrtcy.E.D.Pa.1981) (quoting *State Employees Credit Union of Md., Inc. v. Shipley (In re Shipley),* 1 B.R. 85, 90 (Bkrtcy.D.Md. 1979)). Evidence demonstrating that the loan would not have been granted if the lender had received accurate information is sufficient to show reliance. *Peoples Securi-ty Finance, Inc. v. Aldrich (In re Aldrich),* 16 B.R. 825, 829 (Bkrtcy.W.D.Ky.1982).

A review of the record indicates that there were sound reasons for the bankruptcy court's findings on the reliance element. First National presented unrebutted testimony that it reviewed the false financial figures in the July 1980 loan application and relied on them when it granted Coughlin's loan. In addition, the bankruptcy court found that the bank would not have granted the loan if it had been given the correct figures.

Although we may not have reached the same result as the trial judge in this proceeding, we are not permitted to substitute our findings for his if the record contains evidence to support his findings. The bankruptcy judge's findings are not clearly erroneous.

AFFIRMED.