**In re Edward SNYDER, Debtor.**

Bankruptcy No. 884–41106–20.

United States Bankruptcy Court,
E.D. New York
at Westbury.

Feb. 26, 1986.

Allen R. Morganstern, Mineola, N.Y., for debtor.

Kalb, Friedman & Siegelbaum, (Joel R. Glucksman, of counsel), Roseland, N.J., for Ellis Graphics Corp.

Joseph Farber, Forest Hills, N.Y., Trustee.

## DECISION AND ORDER

ROBERT JOHN HALL, Bankruptcy Judge.

This matter came to be heard upon the complaint of Ellis Graphics Corporation alleging that debtor induced Ellis to extend credit by use of a materially false financial statement; that debtor made false oaths on his bankruptcy petition; and that debtor filed this bankruptcy in bad faith. Debtor denied Ellis's allegations. The Court finds that Ellis has failed to prove its allegations and hereby dismisses its complaint.

## FACTS

1. Debtor was the principal of Dichroic, Inc., a printing firm that regularly leased and purchased equipment from Ellis Graphics.

2. On April 21, 1982, as part of ongoing negotiations for the lease of a laser scanner and related items (hereafter "equipment"), debtor completed a personal financial statement. When he completed the financial statement, debtor certified that his net worth was $129,000. In truth, debtor's net worth was at most $34,000, because he had no equity in his home ($60,000 claimed) or his sailboat ($35,000 claimed).

3. Debtor contends that on April 25, 1982 he sent a letter to Ellis recanting the financial statement, and requesting that any lease agreement be based on a corporate guarantee only.

4. On August 31, 1982 debtor signed in his capacity as President of Dichroic, Inc., for the lease of the equipment.

5. An additional document dated August 31, 1982 entitled "Individual Guaranty" bears debtor's signature. Debtor testified that to the best of his recollection, he signed the guarantee on April 25, 1982. Charlene Motto, Notary Public of New Jersey signed the guaranty acknowledging that debtor on August 31, 1982 proved his identity to her and stated that he executed the guarantee on the same day.

Unfortunately, Mr. Ellis testified that he caused Ms. Motto to lie. On direct examination by his own attorney, Mr. Ellis testified as follows:

Q Do you know who Charlene Motto is?

A Yes.

Q Who is she?

A She is the young lady who works at the bank, First National State Bank in Rutherford, New Jersey, a Notary, and under instructions from Mr. Snyder, who had signed that, didn't have a Notary, didn't have time to get one—the finance company told me it didn't really matter, after, whether I had it notarized or not as long as I was there and witnessed Mr. Snyder's signature—I went to the young lady and told her he wasn't present. She said would I vouch for his signature. I said yes, and she signed it.

Q Would it be fair to say that Mr. Snyder did not sign this document in the presence of Charlene Motto, the Notary that appears on the bottom?

A That's correct.

Q Is it your testimony that you took this document after he had signed it and went to New Jersey to the bank utilized by your company?

A Yes.

Q And Ms. Motto, I take it, is known to you?

A Yes.

Q And you asked her to notarize it in the fashion that you have just testified to?

A Only if I would guarantee to her Mr. Snyder's signature was Mr. Snyder's, and we have been banking at that bank for ten years, so we had no reason to tell her different.

Q You told her that he signed it and she—

A (INTERPOSING) Yes.

6. On September 14, 1982, Tricontinental Leasing Inc. approved the lease to Dichroic and, on the request of Ellis, underwrote the purchase of equipment.

7. In September, 1982, Ellis and Tricontinental entered into a repurchase agreement, which effectively required Ellis to cover any losses caused by a default by Dichroic.

8. In February 1983, Dichroic defaulted on its lease, and in February 1984 Ellis Graphics repurchased the lease, and subsequently, Ellis seized and sold the equipment.

9. On July 10, 1984 debtor filed a voluntary petition for bankruptcy under chapter 7 of the United States Bankruptcy Code.

10. On October 9, 1984, Ellis Graphics filed this complaint.

## DISCUSSION

The Bankruptcy Code allows debtors to discharge debts to give individuals a new opportunity in life without the burden of financial pressures. In weighing the need for a fresh start against competing social policies, however, Congress legislated that debts obtained by fraud are nondischargeable. Ellis's adversary complaint alleged that the losses suffered by Ellis as a consequence of Dichroic's defaults are nondischargeable by debtor because Ellis's guarantee of the lease was obtained by fraud since debtor prepared a false financial statement.

The threshold question in this case is whether debtor personally guaranteed the performance of the lease by his corporation, Dichroic. If the debtor did not guarantee the corporation's performance, his personal financial condition would have been immaterial to Ellis Graphics when it decided to guarantee Dichroic's lease because Ellis could not look to the debtor for payment. Debtor says he wrote a letter to Mr. Ellis in April, and repudiated his agree-

ment to guarantee Dichroic's lease. Mr. Ellis says he never received such a letter. Since debtor's guarantee is dated in August, the face of the document contradicts debtor's alleged retraction in April of his agreement to guarantee. Debtor explained this apparent contradiction by asserting either that (1) he signed the guarantee in April, and it was post-dated by Ellis, or (2) he signed the guarantee by mistake in August.

Any doubt about debtor's willingness to guarantee Dichroic's lease would have been eliminated by an affirmation in front of a neutral third party. Presumably, this is what Tricontinental Leasing Inc. contemplated by putting a space for notarization on its personal guarantee form. Mr. Ellis testified that he subverted the notarization of this form by calling upon his personal influence to persuade a bank clerk to violate the law and perjure herself by affirming that she witnessed Mr. Snyder affirm to her his willingness to guarantee the loan. Since Mr. Ellis had no qualms about persuading a notary to violate her oath and lie on his behalf, the court questions his credibility. Further, since Mr. Ellis's dishonest act is the sole reason that the court lacks the definitive evidence to establish who is lying, Ellis Graphics must suffer the consequences for the resulting gap in the record.[1]

 It is the creditor's burden to establish the elements of fraud through preparation of a false financial statement by clear and convincing evidence. *In re Coughlin*, 27 B.R. 632, 636 (Bkptcy App. Mass. 1st Cir.1978); *In re Vairo*, 40 B.R. 776, 779 (Bkptcy S.D.N.Y.1984); *Household Finance Corp. v. Callery*, 6 B.R. 527, 529 (Bkrptcy S.D.N.Y.1980). The court holds that it is beyond sound discretion to find that Ellis Graphics has established the elements of fraud by preparation of false financial statements in this case, because Ellis has not established by clear and convincing evidence that the debtor agreed to guarantee the transaction that the subject debt arose from. Accordingly, count one of Ellis Graphic's complaint is hereby dismissed.[2]

Ellis's second count is that debtor made false oaths on his bankruptcy petition because he did not list residential real estate or a sailboat as assets, and that he overstated his debt on Nebraska farmland. As to the boat and residence, Ellis proved in the hearing of the fraud count that debtor had no equity in either the boat or house, and thus debtor did not make a false oath by not listing them as assets. As to the Nebraska farmland, Ellis offered no evidence to support its claim, and thus the court hereby dismisses Ellis's second count.

Ellis's third count is that debtor breached the good faith requirement for filing a bankruptcy petition. Since Ellis did not even attempt to substantiate its allegation of bad faith, the court finds no cause to dismiss this bankruptcy.

SO ORDERED.

1. Mr. Ellis testified that he was told by the leasing company that it was permissable to obtain a false notarization. The court suggests that in the future, Mr. Ellis not take his legal advice from leasing companies.

2. Even if Ellis had proven the existance of a personal guarantee, the court questions whether Ellis proved reasonable reliance on the problematic financial statement pursuant to 11 U.S.C. § 523(a)(2)(B)(iii). Apparently, the debtor at the time of the lease, had assets of $34,000. Ellis did not testify about the specific false information he relied on in the financial statement, and thus, may have failed to establish by clear and convincing evidence that he wouldn't have guaranteed the loan had he known the truth.