In re William A. BUTSKI, Eileen M. Butski, Debtors.

BUFFALO FIRE DEPARTMENT FEDERAL CREDIT UNION, Plaintiff,

v.

William A. BUTSKI, Eileen M. Butski, Defendants.

Bankruptcy No. 91–13331 K.
Adv. No. 92–1009 K.

United States Bankruptcy Court, W.D. New York.

May 27, 1993.

Robert A. Shepherd, Buffalo, NY, for plaintiff.

Barry H. Sternberg, Buffalo, NY, for defendants.

## DECISION AND ORDER AFTER TRIAL

MICHAEL J. KAPLAN, Chief Judge.

In this Adversary Proceeding, the Buffalo Fireman's Credit Union ("Credit Union") seeks to have the auto loan debt of William Butski ("Debtor") declared non-dischargeable for fraud, under Section 523(a)(2)(A) of the Bankruptcy Code (11 U.S.C. § 523(a)(2)(A)). The Court finds that the Debtor concealed from the Credit Union the fact that the vehicle, a van, was intended to be someone else's property, and thereby promised the Credit Union a lien which it thereafter could not perfect. As a result, the debt to the Credit Union is declared non-dischargeable.

## INTRODUCTION

■ The Debtor is a fireman with the Niagara Falls Fire Dept[1]. In 1989, he borrowed approximately $8,000 from his Credit Union to buy a 1987 Dodge van. The van was to be used by Debtor's sister and brother-in-law as they could not obtain credit on their own. He had had several prior loans from the Credit Union, and had a good record there. The loan was approved, the van purchased, and was then titled in the brother-in-law's name. For two years the Debtor made the payments on the van (by direct deduction from his pay), even after his sister's marriage failed and the brother-in-law moved away, taking the van with him. Eventually, the Debtor filed this Chapter 7 bankruptcy for unrelated reasons. The Credit Union is still owed approximately $3800 on the loan. It brings this action alleging that the Debtor defrauded them by promising them a security interest on the van, concealing the fact that title would be in the brother-in-law's name and therefore concealing the fact that the Credit Union would be unable to perfect its lien.[2]

## ANALYSIS

New York is a motor vehicle "title state", meaning that the person in whose name the vehicle is "titled" is by definition its owner and is the only person who may grant a lien on it. This Adversary Proceeding raises an extremely narrow issue: Did the Debtor defraud the Credit Union when he promised them a lien on the vehicle, while knowing (but not telling them) that the vehicle was to be for others and not titled in the Debtor's name.

If so, argues the Credit Union, then 11 U.S.C. § 523(a)(2)(A) prevents discharge of the debt[3]. Under that provision, a Debtor is denied a discharge to the extent that the money at issue was obtained by "false pretenses, a false representation or actual fraud...." 11 U.S.C. § 523(a)(2)(A). For his part, the Debtor argues that he did not know that the loan was to be secured by the vehicle. He argues that the loan documents were never explained to him, as he signed the papers "on the run". In addition, the Credit Union never asked about the title certificate; therefore he thought they were not interested in obtaining a security interest in the van.

■ Of the factors considered by courts in analyzing § 523(a)(2)(A) actions, the key issues here are: Whether the Credit Union

1. The Niagara Falls and Buffalo Fire Dept. Credit Unions merged after the loan in question was issued.

2. The Credit Union's failure to discover that it had no "recorded" lien until nearly two years after the transaction is unexplained. The debtor asks the Court to conclude that in fact the Credit Union never applied for the lien until bankruptcy became a prospect. However, there is no evidence that the Credit Union learned of the Debtor's difficulties before the bankruptcy petition was filed, which was after the State responded to the request for the lien. More importantly, as between the Debtor and the Credit Union, a lien would have existed if the title had been in the Debtor's name, even if the Credit Union elected not to bother to record the lien as against the "rest of the world." In other words, the credit union could have deliberately chosen not to record its lien, and the current decision would be the same, unless the Court were convinced by such evidence that the lender really did not care whether it had even a private lien as between it and the Debtor.

3. The Credit Union considered and then declined to amend its complaint in order to allege a "wilful and malicious injury" under 11 U.S.C. § 523(a)(6).

relied on the Debtor's representation that it would have a security interest in the vehicle, and whether the Debtor made those representations with the intent to deceive the Credit Union. *In re Shaheen,* 111 B.R. 48, 51 (S.D.N.Y.1990). On the reliance issue, the Court finds that the Credit Union would not have approved the loan "but for" the Debtor's purported grant of a lien on the van. The Credit Union's branch coordinator's testimony to that effect is supported by the argument that there was no authority to approve the loan on an unsecured basis, as the amount exceeded the Credit Union's guidelines for unsecured lending.

■ On the issue of whether the Debtor intended to mislead the Credit Union, the Debtor argues that he was totally unaware that the Credit Union required a security interest in the vehicle: No one explained that fact to him, he asserts, and he added that the Credit Union never asked him for the "title certificate," which he thought was essential to their obtaining a lien on the vehicle. The Debtor testified that in such dealings with the Credit Union, he might simply "run into the office, sign the papers and jump back onto the fire truck."

■ The fact that one does not read the documents he or she signs does not relieve him or her (absent a showing of special circumstances) from being charged with knowledge of their contents. (A lack of care in signing loan documents has been held to

indicate a reckless disregard for the accuracy of the information contained in those statements. In turn, this reckless disregard supports a finding of intent to deceive under § 523(a)(2)(a). *In re Coughlin,* 27 B.R. 632 (1st Cir. BAP 1983).) The Debtor signed a loan application, a Truth-in-Lending disclosure form and Note, and later a New York State Department of Motor Vehicle Notice of Lien form, all indicating that he was granting the Credit Union a security interest in the van.[4] The Debtor is an intelligent individual with prior auto loan experience as well as a background in the real estate market. There was no evidence of special circumstances (for example, that the Debtor was deceived about the contents of what he was signing) to explain his lack of care in examining the documents before signing. This Debtor clearly had the mental wherewithal to understand what he was signing, and the Notice of Lien form, in particular, was unmistakable as a grant of a lien. I find that he knew that he was promising a lien.[5]

Accordingly, the Court finds that the Debtor had the requisite intent to deceive under § 523(a)(2)(A). To hold otherwise would allow debtors to disavow with near impunity the information contained in the documents they sign by claiming that they did not read the documents.[6]

It should be emphasized, as it was in this Court's decision in John E. Kabel, BK # 91–11255 on March 4, 1992 that "When it is not disputed that a loan application was signed

4. There is a discrepancy in the Truth-in-Lending form in that one area of the form indicates that the debtor is giving the Credit Union a security interest in his Credit Union shares only, while another area reflects that the van is also to serve as collateral. The Credit Union testified that the contradiction was a clerical error. Such a "clerical error" is of great concern to the Court. See footnote 6.

5. Somewhat curiously, the Debtor insists that he knew that he could not give a lien on a van that was to be titled in his brother-in-law's name. Never having thought about it before, the Court itself had to stop and think a moment about this proposition—why a "true owner" could not give a lien before letting it be titled to his relative. (It is not a logical proposition. "Chattel mortgages" in New York prior to 1974 were more "logical.") It would have been understandable that a lay person might not comprehend this conse-

quence of the "Title" law. Thus, a Debtor who argues that he knew he was promising a lien but did not know that letting his relative take title would defeat his promise, might well have a valid defense to this action. That is not the testimony here.

6. The Court notes with some concern what appears to be the demise of the goals of "Regulation Z" and similar efforts. Twenty years ago the defect in the Disclosure Statement described above and the inability of the Credit Union to rebut the contention that terms of the loan were not explained to him would likely have defeated not only a fraud claim, but the enforceability of the loan itself. In this era of "You are pre-approved-, -Just check a box." loan documentation, the safeguards that would resolve such issues decisively in the Debtor's favor are, sadly, long past. The Debtor must be charged with the consequences of his signature here.

by the Debtor, then the contents of the application should, in general, be attributed to the Debtor and entitled at least to great weight, and perhaps decisive effect." As between the Debtor and the creditor who relied on the Debtor's promises, the Debtor may not benefit from the creditor's decision not to perfect its lien as against the rest of the world.[7]

The balance of the debt to the Credit Union is adjudged non-dischargeable. An affidavit of amount due may be filed with the Clerk, and Judgment entered thereupon.

SO ORDERED.

---

7. In the usual instance in which one borrows to buy a vehicle for oneself, it can be more convenient if there is no lien on the vehicle: it may be sold or traded-in without consultation with the lender, and if there is no "loss payee," the lender would play no role in deciding whether any insured collision damage will be repaired. But here where the vehicle was to be someone else's vehicle, it would have been in the Debtor's best interest to make certain that the lender had a duly perfected lien, so that perhaps something could be recovered from a sale of the van if he should otherwise end up "holding the bag." This observation is merely that—an observation—and has no bearing on today's decision.