**In re Rita Elizabeth MILLS, Debtor.**

**SEARS ROEBUCK AND CO., a corporation, Plaintiff,**

v.

**Rita Elizabeth MILLS, Defendant.**

**Adv. No. 86 J 0081.**

United States Bankruptcy Court, D. Colorado.

June 11, 1986.

Richard B. Rose, Sawaya, Rose & Roads, P.C., Denver, Colo., for plaintiff.

Douglas C. Triggs, Colorado Springs, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER comes before the Court on the Complaint to Determine Dischargeability of Debt filed by Sears Roebuck and Co., alleging that the Debtor's debt was non-dischargeable under 11 U.S.C. § 523(a)(2). The trial was held on May 28, 1986.

The debtor, Rita Mills, and her former husband, Charles Mills, had a joint credit account with Sears. Mr. Mills testified he opened the account in Illinois in approximately 1980, and later transferred the account to Colorado. In November, 1982, an updated credit application was submitted to Sears, and Sears subsequently raised the credit limit on the account to $1,646.00. In June, 1984, another account update resulted in a credit limit increase to $2,688.00.

Sears alleges, and the debtor admitted, that she signed Mr. Mills' name to both account updates. The debtor also stated that she completed the second account update while a Sears representative was visiting her home, after Mr. Mills had moved out of the home and after she had filed for divorce.

The debtor testified that she was attempting to sell her residence in the summer of 1984, and that Charles Mills had agreed to the sale. She purchased a sprinkler system for the home in August, 1984, at which time she signed "Charles Mills" to the sales slip and installation estimate. The other sales slips entered into evidence by Sears were signed by the debtor using her own name.

The debtor further asserted that she customarily, and with her husband's knowledge and consent, signed his name to documents. As evidence, she submitted a deposit slip from a bank account she held jointly with Mr. Mills, and a sales slip from Wards, upon which she had signed Mr. Mills' name. She explained that since she handled most of the family's financial affairs, they had adopted the practice of her signing her husband's name.

Charles Mills, however, testified that he did not consent to the debtor signing his name, nor did he authorize her to sign his name to the Sears account documents. He further stated he was not aware of the purchase of a sprinkler system or draperies and did not approve those purchases before they were made. He claimed to have had numerous arguments with the debtor regarding the use of his signature, but admitted she was an authorized buyer on the Sears account.

The debtor asserted she was working in Denver at the time of the second account update in June, 1984. She did not provide this employment information on the update form, but filled in only information as to

Mr. Mills' employment. In addition, she did not inform the Sears representative of her pending divorce action. She stated she did not list her own employment on the update because Mr. Mills was the primary party to the account and because she knew that his income would be needed in order to get the credit limit raised. She explained her failure to inform the Sears representative of the divorce by asserting that he asked no questions about changes in family status, so she volunteered no information. She admitted she knew she didn't have enough credit in her own name to get the credit limit raised enough to enable her to purchase the sprinkler system and the drapes.

Sears claims the updated credit applications constitute fraudulent misrepresentations as to Mr. Mills authorization of the applications. Sears contends that the balance due on the account, in the amount of $3,946.64 is non-dischargeable under 11 U.S.C. § 523(a)(2).

The debtor argues that it was "standard operating procedure" for her to sign Mr. Mills' name to financial documents. She maintains that Mr. Mills knew of and approved of this practice, and that he had agreed to the purchase of the sprinkler system and the drapes as an enhancement to the value of their house prior to sale.

11 U.S.C. § 523(a)(2) provides that an individual debtor is not discharged from any debt:

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive . . .

The burden of proof rests with the creditor to prove the fraud or false representation of the debtor. *In re Cook*, 21 B.R. 112, 114 (Bankr.N.M.1982). The creditor must meet this burden of proof with clear and convincing evidence. *In re Fains*, 37 B.R. 539, 542 (Bankr.E.D.Pa. 1984). This Court has noted that to have a debt found non-dischargeable under 11 U.S.C. § 523(a)(2), a creditor must prove the following elements:

1. The debtor made a false representation of fact;
2. The fact was material;
3. The debtor made the representation knowing it to be false;
4. The debtor made the representation with the intent that the creditor act in reliance on the representation;
5. The creditor relied on the representation;
6. The creditor's reliance was justified;
7. The reliance caused damage to the creditor.

*In re Wade*, 43 B.R. 976, 980 (Bankr. Colo.1984) (citations omitted). In addition, the court found that the creditor must show the debt was for obtaining "money, property, services, or an extension, renewal, or refinance of credit." *Id.*, at 980–982.

In the instant case, Sears has failed to prove its case by clear and convincing evidence. There is no dispute that the debtor made a false representation of fact in signing her husband's name, and that she knew it to be false. However, there has been no showing that the fact was material, as the account was a joint account under which both the debtor and Mr. Mills were authorized to buy and under which they were both liable for payment. Further, the debtor denies any intent to defraud Sears, although she did place information regarding her husband's income on the credit update in the hopes that Sears would use it to raise the credit limit. This information was true, not false, and since the account was still a joint account, with

two authorized buyers, it was appropriate information for the debtor to provide. The addition of her own income to the application would have served to aid her attempt to gain more credit, so that omission is not material, nor does it demonstrate fraudlent intent. Similarly, the failure to reveal the divorce filing is not material and does not show intent to defraud. There is no requirement that parties be happily married in order to obtain joint credit, and no prohibition against non-married parties maintaining a joint credit account.

Sears attempted to show reliance on the debtor's representations in extending credit, and this evidence was unrebutted. However, because the fact of Mr. Mills income is not false, and because omission of details about the debtor's income and the divorce filing were not material, reliance on those representation, while perhaps justified, did not result in damage to Sears. The debtor's signing of her husband's name similarly could not have invoked reliance which caused damage to Sears, because the debtor, as an authorized buyer on the account, could have obtained the goods by signing her own name. Therefore, although the signatures were false representations, in writing, upon which Sears relied, Sears suffered no damages on account of the signatures. In addition, the fact that the debtor was able to sign "Charles W. Mills" to sales slips and credit applications with apparently no questions asked suggests Sear's reliance on the signatures may not have been reasonable.

There is much contradictory evidence in this case, but the debtor has presented rebuttal to many of Sears' essential points. A creditor must prove actual fraud, involving moral turpitude or intentional wrong, not simply fraud inplied in law. *In re Simpson*, 29 B.R. 202, 209 (Bankr.N.D. Iowa 1983). A balance or equilibrium of evidence is insufficient to meet the "clear and convincing" standard of proof. *Id.*, at 208. It is, therefore,

ORDERED that the relief sought in the complaint is denied, and the complaint dismissed.

FURTHER ORDERED, that the debt owed by the debtor to Sears, in the amount of $3,946.62 is declared to be dischargeable. Each party shall bear its own costs and fees with respect to this matter.