In re Paul ZAKOVICH, a/k/a Paul J. Zakovich, SS. No. 505–70–0023, Debtor.

ENTERPRISE NATIONAL BANK, Plaintiff,

v.

Paul ZAKOVICH, Defendant.

Bankruptcy No. 86 B 3693 C.
Adv. No. 86 C 0836.

United States Bankruptcy Court, D. Colorado.

March 27, 1987.

Arthur B. Walsh, Englewood, Colo., for Enterprise Nat. Bank.

Paul R. Wood, Denver, Colo., for Paul J. Zakovich.

## DECISION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.*

Heard on January 29, 1987, on the complaint filed by Enterprise National Bank which seeks a determination of nondischargeability of a debt owed to it by the debtor, Paul Zakovich, pursuant to 11 U.S.C. § 523.

The pertinent facts are as follows:[1] Debtor was the president of Eurocar Colorado, Ltd., a corporation engaged in the business of importing expensive automobiles from Europe for resale in the U.S. One of Eurocar's suppliers in the Federal Republic of Germany was Bernd Schaab, who (under one method of doing business) would ship to Eurocar, on consignment, autos which he was unable to sell in Germany. The shipping invoice would include a figure which Schaab hoped to obtain, but the final price was ultimately determined by the market, since there was no absolute "bottom line" below which Eurocar could not sell on consignment. If the selling price were higher than that stated on the invoice, Eurocar was entitled to the excess; if less, the entire selling price was remitted to Schaab. Of six consignment transactions, two yielded a selling price higher than the invoice, while four fell short. Although the debtor was aware in 1984 that Schaab was asserting a claim against him regarding several prior deals with Eurocar, Zakovich testified that there never was a specific amount alleged to be due, nor did Schaab refuse to continue to do business with Eurocar, on account of that unresolved dispute. Schaab sold sixteen cars through or to Eurocar in 1985. See Defendant's Exhibit 1. However, Schaab's later unannounced action, stemming from the debt in question, would precipitate Zakovich's present problems with Enterprise National Bank, the plaintiff.

Eurocar's second method of getting autos from Schaab was to first obtain a bank loan, then order the particular car from Germany, and remit the full purchase price to Schaab, who would deliver the vehicle to the U.S.A. If the specific vehicle was identified at the time of the sale, the vehicle description, together with its vehicle identification number (VIN) would be included in Zakovich's loan agreement with the bank. See Defendant's Exhibit 5. If only a general type of car was being ordered (e.g. a 1985 Mercedes 300E), no VIN would be included until the specific car was identified. See Plaintiff's Exhibit A.

Although these loans were to enable Eurocar to obtain autos for resale, with the loan proceeds deposited into Eurocar's account, see Plaintiff's Exhibit E, Zakovich applied for the loans in his name, personally. See Plaintiff's Exhibit A, Defendant's Exhibit 5. After obtaining such a loan, Zakovich would forward the full purchase price to Schaab, before the car was shipped. The average time span between a loan and its repayment was 90–120 days.

The three-way business relationship between Enterprise, Zakovich and Eurocar began in early 1985 after the bank requested and received both Eurocar's, see Plaintiff's Exhibit C, and Zakovich's financial statements. See Plaintiff's Exhibit B (statement dated September 1, 1984). Subsequently, Eurocar opened an account with Enterprise and executed the appropriate corporate documents so that Zakovich, as president, could write checks against that account. See Plaintiff's Exhibit D. The business relationship apparently was working, for in 1985 Enterprise made eleven loans to Eurocar to finance transactions with Schaab, see Defendant's Exhibit 1, and except for the October 7, 1985 loan in question, Enterprise was paid on all the loans through the proceeds of sales of cars obtained from Schaab.

* Of the District of Rhode Island, sitting by designation.

1. This decision constitutes our findings of fact and conclusions of law. See Bankruptcy Rule 7052 and Fed.R.Civ.P. 52.

On that date (October 7, 1985), Zakovich obtained a $35,000 loan from Enterprise for the purchase of a 1985 Mercedes 300E, with the VIN omitted, *see* Plaintiff's Exhibit A, in conformity with the past practice of the parties when no specific auto was identified to the contract at the time the loan was procured. The proceeds of the loan were deposited in Eurocar's account, *see* Plaintiff's Exhibit E, on which the debtor drew to forward three drafts totaling 105,-000 deutschemarks ($39,931.70) to Schaab on October 9, October 16, and November 12, 1985. *See* Defendant's Exhibits 3, 4. Zakovich structured payment in this manner to take advantage of currency fluctuations of the dollar vis-a-vis the deutschemark, to buy the greatest number of marks for the fewest dollars.[2] Unknown to Zakovich, Schaab apparently and unilaterally decided that this was the time to settle his dispute regarding the earlier consignment sales, and, rather than selling Zakovich the car he thought he had purchased, Schaab applied all the money to satisfy what he felt were his prior claims against Eurocar. No car was shipped, and Zakovich was unable to pay Enterprise on its loan which came due February 4, 1986. Debtor testified that he learned in April 1986 that Schaab did not intend to ship the 1985 Mercedes 300E.

■ Enterprise seeks to have the October 7, 1985 loan declared nondischargeable pursuant to 11 U.S.C. § 523.[3] Since the bank has not specified which subsection it is proceeding under, within § 523, we shall examine both § 523(a)(2)(A) and (B).[4] Section 523(a)(2)(B) makes nondischargeable any debt for "money, property, services" obtained by the use of a false financial statement in writing. To establish that such a debt is nondischargeable, the complaining creditor must prove that (1) the debt was for obtaining money (2) by use of a statement in writing (3) that is materially false (4) respecting the debtor's financial condition (5) on which the creditor reasonably relied and (6) was published by the debtor with intent to deceive. *In re Coughlin*, 27 B.R. 632, 635 (B.A.P. 1st Cir. 1983). *Accord Armstrong Rubber Co. v. Anzman (In re Fred H. Anzman)*, 73 B.R. 156 (Bankr.D.Colo. 1986). Each element must be proved by clear and convincing evidence. *In re Coughlin, supra; Sears Roebuck & Co. v. Mills (In re Rita E. Mills)*, 73 B.R. 168 (Bankr.D.Colo. 1986); *Guilmette v. People's Savings Bank (In re Guilmette)*, 12 B.R. 799, 802 (Bankr.D.R.I. 1981). There is no question that debtor obtained money (on behalf of Eurocar) from the bank, that the money was not repaid, and that as a result Enterprise suffered a loss. However, Enterprise introduced no direct evidence that the debtor's financial statement was false, either when it was prepared or when it was submitted to the bank. Rather, Enterprise argues that the dispute with Schaab, which was not disclosed on the financial statement, renders that statement materially false, and that the bank relied thereon to its detriment. The bank also argues that even if the statement were not false when submitted, it was later rendered false by debtor's subsequent failure to disclose the dis-

---

2. A different currency exchange rate was in effect on each date.

3. § 523. **Exceptions to discharge.**
   (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
   . . . .
   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
   (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—
   (i) that is materially false;
   (ii) respecting the debtor's or an insider's financial condition;
   (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
   (iv) that the debtor caused to be made or published with intent to deceive;

4. None of the other exceptions to discharge set out within § 523 are applicable to facts of the instant adversary proceeding.

pute.[5] With regard to Zakovich's state of mind, we consider it significant that, although Zakovich was aware of Schaab's alleged claim regarding the prior consignment sales, that did not prevent Schaab from continuing to do business as usual with Eurocar/Zakovich. With Enterprise providing separate financing on each deal, Zakovich and Schaab concluded ten successful transactions in 1985, until Schaab misapplied the proceeds of the October 7 loan. The most that could be inferred from the debtor's failure to disclose the dispute with Schaab, is carelessness in his business dealings, and not a reckless indifference to the accuracy of the information in the financial statement, from which we could infer an intent to deceive. *See In re Coughlin, supra,* at 636.

■ Even if we assume, arguendo, that the failure to disclose the dispute with Schaab was sufficiently material as to render the debtor's financial statement intentionally false,[6] Enterprise has not proved that in October 1985 it was substantially relying on that financial statement as the basis for continuing to extend credit to Zakovich. The bank never requested an update of the financial statement, and there is no showing that Enterprise extended credit in October 1985 in either full or partial reliance on the financial statement. *See In re Coughlin, supra,* at 637; *In re Anzman, supra.* To the contrary, Enterprise appears to have relied on the history of its prior, successful dealings with the debtor as the basis for extending credit, and not on the financial statement. *See Waterbury Conn. Teachers Federal Credit Union v. Ciampi (In re Ciampi),* 14 B.R. 441, 443 (Bankr.D.Conn.1981). Accordingly, we conclude that Enterprise failed to prove by clear and convincing evidence that Zakovich's financial statement was false, or that Enterprise relied on that statement in extending credit to the debtor. Therefore, the debt in question is not excepted from discharge under 11 U.S.C. § 523(a)(2)(B).

Although discharged under § 523(a)(2)(B), the obligation could still be nondischargeable if Enterprise has shown "false pretenses, a false representation or actual fraud" under § 523(a)(2)(A). To meet the requirements of this section the bank must prove that the debtor: (1) made a false representation of fact (2) which was material (3) knowing the representation to be false (4) made with the intention that the creditor rely on the representation (5) that the creditor relied on the representation (6) that the reliance was justified (7) that the reliance caused damage to the creditor. *Simmons v. Wade (In re Wade),* 43 B.R. 976, 980 (Bankr.D.Colo.1984). The creditor has the burden of proof regarding each element by clear and convincing evidence. *In re Mills, supra.*

■ Enterprises's entire argument rests on the assumption that failure to disclose the dispute with Schaab was a materially false representation, and that the debtor intended that the bank rely on said nondisclosure in its decision to extend credit. The evidence shows, however, that the dispute did not disrupt the continuing business relationship between Eurocar and Schaab before the October 1985 transaction. We also find that Zakovich did not have reason to believe that his relationship with Schaab would be jeopardized in the future by this dispute. There is no evidence as to why Schaab waited until so late in the year to act, when he had been doing business on normal terms throughout 1985, nor was there any showing that the debtor had any reason to believe that Schaab would apply the money as he did, or when he did. It is the debtor's state of mind prior to and leading up to the date of the loan that is crucial to a determination of this issue, and Zakovich's position is that he didn't owe Schaab anything. Without evidence that the debtor knowingly and intentionally intended to cause financial harm to the bank,

---

5. The bank does not indicate exactly when, after Zakovich submitted the financial statement, his duty to disclose the dispute arose, so as to make any subsequent lack of disclosure sufficient to render the debt nondischargeable.

6. Naturally, an arguendo discussion does not indicate that we consider the financial statement false because of nondisclosure.

there cannot be a finding that the debt in question is nondischargeable. Upon consideration of the entire record, we conclude that there is no basis for such a finding. On the contrary, there is uncontradicted evidence that Mr. Zakovich wired $39,-931.70 to Bernd Schaab in Germany, in a small number of closely spaced payments. Included in the total was nearly $5000 of his personal funds. In these circumstances, it is inconceivable that Zakovich would have parted with nearly $40,000, if his state of mind were as asserted by Enterprise. The most that Enterprise has shown is that Zakovich is either a poor judge of character, or too naive to do business with the likes of Bernd Schaab, neither of which render this debt nondischargeable. Accordingly, we conclude that Enterprise has not met its burden of proof to show by clear and convincing evidence that the debt is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

Enter Judgment accordingly.