**In re Bruce M. LYONS, Debtor.**

**SHAWMUT BANK, Plaintiff,**

v.

**Bruce M. LYONS, Defendant.**

**Bankruptcy No. 90–11517.
Adv. No. 90–172.**

United States Bankruptcy Court,
D. New Hampshire.

Jan. 21, 1993.

Michael C. Gilleran, Shafner & Gilleran, Boston, MA, for Shawmut Bank, plaintiff.

Marc A. Pinard, Hahn, Tamzarian & Pinard, Manchester, NH, for debtor, Bruce Lyons, defendant.

MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

## I. Introduction

This adversarial proceeding has come back before the Court on Shawmut Bank's ("Shawmut") motion for reconsideration and vacatur of a final judgment entered by this Court on September 16, 1991 in favor of the defendant holding the debt in question dischargeable. The basis of Shawmut's motion for reconsideration and vacatur is its contention that the Court incorrectly applied a subjective standard to gauge the defendant's state of mind in determining the intent to deceive element of a § 523(a)(2)(B) dischargeability complaint. For the reasons that follow the Court now vacates the original judgment in favor of the defendant and holds that the subject debt is nondischargeable. The following constitutes the Court's findings of fact and conclusions of law in accordance with Fed.R.Bankr.P. 7052.

## II. Applicable Law

§ 523. Exceptions to discharge.

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\*   \*   \*   \*   \*   \*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

\*   \*   \*   \*   \*   \*

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; or. . . .

\*   \*   \*   \*   \*   \*

## III. Facts

According to Shawmut's adversarial complaint, on or about June 14, 1989 Shawmut entered into a loan arrangement with the defendant whereby Shawmut loaned the defendant $75,000. In connection with the loan transaction, the defendant provided Shawmut with his personal financial statement on or about February 10, 1989. On schedule D of that financial statement, entitled "Real Estate Owned," the statement contained blank space for the listing of real estate owned by a would-be borrower. In one particular column of said schedule, the applicant was suppose to make an indication to the cue "Title in name of."

The defendant listed two properties. The first was a property on North Road in West Newbury, Vermont. It was listed as having a market value of $725,000 and as being owned by an entity indicated as "Woodrose Pub.," by which is apparently meant Woodrose Publications. Plaintiff's Exh. A–3. At the original trial, the defendant testified he believed he owned 50% of the stock of Woodrose Publications. The other property listed on the financial statement submitted to Shawmut was in West Glover, Vermont. The value assigned was $1,000,000, no encumbrances, and was listed as being owned by "Bruce + Susan Lyons." [1] Plaintiff's Exh. A–3.

At trial Shawmut contended that the listing of the property in West Newbury, Vermont as being solely owned by Lyons, either through stock ownership of Woodrose Publications or otherwise, was false in that the West Newbury, Vermont property was wholly owned by the defendant's wife. Shawmut also contended the financial statement was materially false with respect to the West Glover, Vermont property in that the defendant transferred his interest in the property to his wife in August, 1988.

At trial the defendant gave testimony that he believed he owned all the stock of Woodrose Publications and its property in

---

**1.** The Court notes that the residence in West Glover, Vermont was the most valuable asset listed on defendant's financial statement.

West Newbury, Vermont. In his answer, the defendant stated that he believed he owned at least one-half of the property in West Glover, Vermont based on a prenuptial agreement. However, at trial the defendant admitted that at the time of the February, 1989 financial statement he had no ownership interest in the West Glover, Vermont residence. Trial Transcript, p. 10, lines 18–20.

The original trial was conducted on September 6, 1991 and the Court entered judgment in favor of the defendant determining the subject debt to be dischargeable. At the conclusion of the trial the Court indicated it would entertain a motion for reconsideration if Shawmut could show controlling applicable case law on the issue of whether a debtor's intent to deceive is measured by an objective or subjective state of mind standard.

On September 26, 1991, Shawmut moved for reconsideration and vacatur of the judgment in favor of the defendant. It is Shawmut's contention that the Court applied a subjective state of mind standard when the proper standard to determine the debtor's intent to deceive is the objective state of mind standard.

On December 10, 1991 the Court granted Shawmut's motion for reconsideration and limited retrial solely to the legal issue of which standard gauges a debtor's state of mind with respect to the finding of an intent to deceive for purposes of 11 U.S.C. § 523(a)(2)(B)(iv).

Retrial occurred on April 13, 1992 and the parties submitted post-trial memoranda of law.

The Court has now reviewed the post-trial memoranda of law, the transcript of the original trial, and the Court's notes from the retrial and now determines the debt to be nondischargeable.

### IV. Discussion

At the conclusion of the trial on April 13, 1992, the Court made bench findings, inter alia, that the defendant knew that his financial statement was inaccurate with regard to the state of the title of his personal residence. The Court also found that the defendant considered this inaccuracy a pure technicality from a control statement and would not affect his access to that property and the equity in that property if he were forced into a situation to get to the property to cover any debts. The Court also found that the Bank did rely upon that false statement in his financial statement and that this reliance was reasonable.[2]

During the original trial, it was the Court that interjected into the colloquy of counsel the legal issue of which standard governs the finding of intent to deceive with respect to a nondischargeability complaint. The Court stated:

"Those questions are quite close and it may be that the Bank on a motion for reconsideration can show me some case law that would sway my judgment in that regard; but it does appear to me that in terms of subjective intent here, the—which has to be inferred from all the circumstances—that the debtor, having gone through a $300,000 transaction with the Bank, having dealt with this gentlemen Mr. Loy who he had never actually seen, and got in that transaction, and having got in the $70,000 approved quickly, would not consciously have thought back and thought that, "well they may be relying on that Glover property and maybe that's misleading."

Trial Transcript of Court's Findings, p. 7, lines 11–21.

The submitted post-trial memoranda of law have failed to identify a single case which squarely holds that the intent to deceive element is judged by either an objective or subjective state of mind standard. The Court's own research has only uncovered two cases where a square holding was made on which standard gauges a debtor's state of mind. *Compare In re Barron*, 126 B.R. 255, 260 (Bankr.E.D.Tex. 1991) (held, that a debtor's state of mind with respect to the intent to deceive element is to be gauged by an objective standard) *with In re Kantor*, No. 84–7116, 1986

2. See Footnote 3 infra.

WL 28904 (Bankr.S.D.N.Y. Oct. 1, 1986) (held, that "subsection 523(a)(2)(B)(iv) requires proof of actual intent to deceive by a subjective, rather than an objective standard ... defining of an intent to deceive basically requires a finding of fact as to the debtor's state of mind at the time the materially false financial statement was made." *Id.* at 16).

Without deciding whether *Kantor* or *Barron* has settled upon the appropriate standard to gauge a debtor's state of mind for purposes of making the 523(a)(2)(B)(iv) finding, this Court now concludes that that legal question has deflected the Court from focusing on the objective facts as already found.

As already noted above, at the conclusion of the April 13, 1992 hearing, the Court found that the debtor knew at the time he submitted the disputed financial statement that it was inaccurate with regard to the state of title of the personal residence. This being so, there is really no overriding need to delve into his subjective state of mind as to his motive or why he left that false statement on the financial statement submitted to plaintiff. Looked at either objectively or subjectively, or both, the Court has already determined that this debtor had a present and personal knowledge that the financial statement he submitted to Shawmut was false as a matter of fact. This finding requires a conclusion that he had the requisite intent to deceive under § 523(a)(2)(B)(iv).

Like the present case, Judge Berk's slip opinion in *In re Kantor*, No. 84–7116, 1986 WL 28904 (S.D.N.Y. October 1, 1986), addressed a § 523(a)(2)(B) complaint on facts virtually identical to the case at bar. In *Kantor*, the debt was held nondischargeable by applying a subjective state of mind standard. The *Kantor* debtor had represented in at least three different sections of a financial statement that all his assets were solely owned. *Kantor*, at 3. Like the present case, the financial statement in *Kantor* included a column whereby the applicant was to indicate the nature of any ownership interest(s) in real property. No indication of joint ownership was made.

However, at trial, the *Kantor* defendant testified that more than two-thirds of his reported total assets were owned jointly with his wife. *Kantor* at 4. Judge Berk found with respect to a certain loan dated October, 1982 that the "material falsity consisted of Cantor's failure to disclose the joint interest of his wife and his principal assets, namely the real estate, furniture, art, jewelry and clothing." *Kantor* at 9.

Likewise, the defendant in this case knowingly made the same kind of material misrepresentation with respect to the ownership of his personal residence in West Glover, Vermont. A material misrepresentation knowingly made as to the nature of an ownership interest in an asset listed on a financial statement has been held to satisfy the 523(a)(2)(B)(iv) element. *In re Hodges*, 116 B.R. 558, 562 (Bankr.N.D.Oh.1990) (held, debt nondischargeable pursuant to 523(a)(2)(B) upon a finding that debtor knew of false contents of financial statement which represented debtor's sole ownership of $185,000 in stock and joint ownership of two parcels of land with his wife when in fact debtor never owned any of subject assets); *Long Island Trust Co. v. Rodriguez*, 29 B.R. 537, 541 (Bankr. E.D.N.Y.1983) (held, debt nondischargeable pursuant to 523(a)(2)(B) upon a finding that debtor knew of false contents of financial statement which represented debtor's sole ownership of $650,000 in real assets when in fact subject assets had been transferred to debtor's wife); *In re Ricky*, 8 B.R. 860 (Bankr.M.D.Fla.1981) (held, debt nondischargeable pursuant to 523(a)(2)(B) upon a finding that debtor knew listing of sole ownership of real property on financial statement was false where subject property was owned in the entirety); *see also In re Winfree*, 34 B.R. 879, 884 (Bankr. M.D.Tn.1983) (rejecting the debtor's claim of subjective good intent, the court held debt nondischargeable pursuant to 523(a)(2)(B) upon a finding that the debtor knew that several tracts of land listed as assets on financial statement were not assets but were merely a "wish list" of properties that the debtor hoped to eventually acquire); *In re Brown*, 32 B.R. 554, 556–57 (Bankr.E.D.Tn.1983) (rejecting debtor's tes-

timony of subjective good intent and a belief that he "totally controlled" certain real assets, the court held debt nondischargeable pursuant to 523(a)(2)(B) upon a finding that the debtor knowingly omitted from financial statement his wife's entirety interest in four of six tracts of land listed on financial statement); *contra In re Fritts*, 26 B.R. 43 (Bankr.E.D.Tn.1982) (held, debt dischargeable upon a finding that bank had failed to establish that debtor intended to deceive bank by failing to note his wife's entirety interest in their personal residence on financial statement).

While each § 523(a)(2)(B) adversary proceeding is *sui generis* in that the parties will have varying degrees of financial and/or commercial transactional expertise and varying degrees of familiarity with the use of financial statements to obtain loans, the debtor is nonetheless expected to know that he is required to state true facts in such statements in order to obtain a loan. Such things as "secret reservations" or "undisclosed motives" are not an acceptable substitute for true and honest disclosure on the financial statement.

Even if the Court were required to consider the debtor's subjective thinking with regard to the submission of the financial statement he delivered to Shawmut as it pertains to the title of the property in question, it would not help this debtor in the present case. It has been held that even where the debtor does not know of the actual falsity of an item on a financial statement, the debtor may still be found guilty of an intent to deceive pursuant to § 523(a)(2)(B)(iv) if such debtor evidenced a reckless indifference to the accuracy of the information in the financial statement. *In re Coughlin*, 27 B.R. 632, 636 (1st Cir. BAP 1983). In discussing the difficulty, if not impossibility of establishing direct proof of "intent to deceive", the *Coughlin* BAP panel stated:

> A creditor can establish intent to deceive by proving reckless indifference to, or reckless disregard of, the accuracy of the information in the financial statement by the debtor. *Id.; Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Kimberly*, 13 B.R. 145, 146 (Bankr. S.D.Fla.1981). Courts may assume that debtors intend the natural consequences of their acts. *First Westside National Bank v. Voeller*, 14 B.R. 857, 860 (Bankr.D.Mont.1981). Intent to deceive is present when the debtor has 'seen the financial statement and the errors were such that he knew or should have known of their falsity.' *Modern Distributors, Inc. v. Gray*, 22 B.R. 676 (Bankr. W.D.Wisc.1982).

With regard to the present debtor and the present debt, the debtor's reckless indifference was not as to the status of the title of the property, which the Court has already found the debtor knew to be false in that it was held by the wife only. Rather, it was the defendant's assumption that he and his wife would continue forever in the marriage state and that divorce might not occur. At a minimum, in my opinion, if subjective mind and motive were relevant, in this case, which under my conclusion above it is not, the debtor was obligated to advise the Bank of the state of the title and his reasons for believing that he could control the property. The Bank could then have either accepted his reasons or would have been put on notice that they should have also obtained the signature of his then wife on the loan in question to preserve its rights to proceed against the collateral if the loan went into default. *See In re Brown*, 32 B.R. at 557.[3]

3. The Court at the original trial, on September 16, 1991, made an oral finding that the requisite reliance by the bank was not shown, partly because the bank had not sought to have the wife sign on the note. While the order granting the retrial limited the issues to the "intent to deceive" question the parties actually adduced evidence at the retrial regarding the bank's reliance as well. Based upon the entire record from both trials the Court recedes from the original oral finding and finds that the requisite reliance on the financial statement was shown by the bank. While they might have more fully protected themselves by having the wife sign there is no legal requirement that they do so. They were entitled to rely on the truthfulness of the debtor's statements on the financial statement. The reliance is further shown by the amplification of the details of the loan application, the time of the faxing of a copy of the financial statement by the debtor to the bank

**100**

### V. Conclusion

Based on the foregoing, the Court vacates the final judgment dated September 16, 1991, and determines that the debt in question is nondischargeable. A separate final judgment will be entered in accordance with the holding of this memorandum opinion.

officer, and the actions of the bank personnel thereafter as developed in the April 13, 1992

retrial.