In re Patricia BUTTERWORTH,
Debtor.

Northeast Credit Union, Plaintiff,

v.

Patricia Butterworth, Defendant.

Bankruptcy No. 01–12178–MWV.
Adversary No. 01–1176–MWV.

United States Bankruptcy Court,
D. New Hampshire.

May 28, 2002.

Albert E. Souther, Dover, NH, for plaintiff.

Bradley M. Lown, Coughlin, Rainboth, Murphy & Lown, Portsmouth, NH, for defendant.

## *MEMORANDUM OPINION*

MARK W. VAUGHN, Chief Judge.

The Court has before it the complaint of Northeast Credit Union ("Plaintiff"/"Northeast") against Patricia Butterworth ("Defendant"/"Debtor") seeking an exception to discharge of monies owed on a Northeast VISA credit card pursuant to 11 U.S.C. § 523(a)(2)(B).[1] Based upon the record before the Court and for the reasons set out below, the Court denies the Plaintiff's non-dischargeability complaint.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

*FACTS*

The Debtor owned and operated a beauty salon, which opened on January 4, 2000 and closed on June 16, 2001. On May 4, 1999, the Debtor applied to Northeast for a VISA credit card and was approved with a maximum credit line of $5,000 (the "Application"). *See* Pl.'s Ex. 4. The Application included a "gross monthly pay base" entry of $2,916.67 and also showed some "loans owed." *See id.* On March 24, 2000, the Debtor evidently applied for an increase in the credit card amount and was granted an increase to $15,000. *See* Def.'s Ex. 106. Although the Northeast form showed an application date of March 24, 2000, the "VISA Credit Card Limit Increase" form (the "Credit Increase Form") was dated March 17, 2000. *See* Pl.'s Ex. 3. With respect to the Debtor's financial condition, this document, which is different from the initial Application, asked only for the Debtor's "base annual income" to which the Debtor answered "$50, K."

Additionally, the Plaintiff introduced into evidence the Debtor's 1999 individual and 2000 joint tax returns, which showed income of $14,412 for 1999 and $19,684 for 2000. *See* Pl.'s Ex. 1 and 2. Further, undisputed testimony was presented that in June 2000 the Debtor had a zero balance on the credit card. Apparently, this balance remained zero until November 29, 2000 when the Debtor used the card to charge a total of $17,129.89 through December 2000. It is this debt that Northeast seeks to have excepted from discharge. In March 2001, the Debtor filed a petition under Chapter 13 which was subsequently dismissed. This Chapter 7 case was filed on June 28, 2001, shortly after the close of the Debtor's business.

---

**1.** Unless otherwise noted, all section references hereinafter are to Title 11 of the United States Code.

## DISCUSSION

Exceptions to discharge under § 523(a) are to be narrowly construed in favor of the debtor. *See McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 32 (1st Cir.2001); *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir.1997). Creditors must prove by a preponderance of the evidence that their claims come squarely within the exception to discharge. *See Grogan v. Garner*, 498 U.S. 279, 283, 111 S.Ct. 654, 657, 112 L.Ed.2d 755 (1991); *Spigel*, 260 F.3d at 32; *Palmacci*, 121 F.3d at 787.

The Plaintiff brings its complaint pursuant to § 523(a)(2)(B),[2] which reads as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B). To satisfy its burden under § 523(a)(2)(B), the Plaintiff must prove that there is a statement, in writing, that it is materially false concerning the Debtor's financial condition, that Northeast reasonably relied on this false statement and that the Debtor made the false statement with the intent to deceive. *See id.*

At the outset, the Court finds that the March 17, 2000 request for an increase in the credit card limit is not a writing "respecting a debtor's ... financial condition," adopting the reasoning of Judge Yacos in *Bal–Ross Grocers, Inc. v. Sansoucy (In re Sansoucy)*, 136 B.R. 20, 23 (Bankr.D.N.H.1992). In *In re Sansoucy*, Judge Yacos indicated that, for purposes of § 523(a)(2)(B), the phrase "financial condition" should be given its "normal commercial meaning" of "an *equation* of assets and liabilities...." Further, the Court stated that a " 'statement of a debtor's ... financial condition' ... means a balance sheet and/or profit and loss statement or other accounting of an entity's overall financial health and not a mere statement as to a single asset or liability." *In re Sansoucy*, 136 B.R. at 23. The Credit Increase Form is clearly not an equation of the assets and liabilities of the Debtor, but only one aspect of the Debtor's financial condition, i.e., "base annual income." The Court finds that the term "base annual income,"which is not defined, and, as the Debtor testified, was not explained to her, is ambiguous in the context of one running a business as a *d/b/a* and not a separate legal entity. Further, with regards to the Application, although it lists some of the Debtor's financial obligations, i.e., loans, it is surely not a financial statement in the ordinary sense that asks for a complete listing of the Debtor's assets and liabilities.

There is no evidence that Northeast relied on the base annual income entry on

---

**2.** The amended complaint refers generally to § 523(a)(2). At the end of the hearing held on May 22, 2002, the Court queried Plaintiff's counsel as to which section of 523(a)(2) he was proceeding under and was informed that he was proceeding solely under § 523(a)(2)(B).

the Credit Increase Form in granting the credit card limit increase. At the trial, the Credit Increase Form was used by the Plaintiff merely to show the difference in the income shown on the statement and the Debtor's 1999 tax return. The only testimony on behalf of Northeast was that of its collection manager, who testified without challenge as to their lending practice. However, she had no part in the credit decisions, either in 1999 or 2000, made by Northeast.

■ Even if one or more of the documents referred to above could be interpreted to be a statement of the Debtor's financial condition, the Court finds that there is insufficient evidence of the Debtor's intent to deceive. The evidence primarily relied on by Northeast was the discrepancy in the income portions of the Application and the Credit Increase Form and the Debtor's tax returns. At trial, the Debtor couldn't explain the difference, indicating that she gave her financial information to her accountant who prepared her tax returns. The Court finds the testimony of the Debtor to be credible, considering her overall business experience and the ambiguous nature of the Northeast documents.

While in § 523(a)(2)(B) cases intent is usually inferred by the actions of a debtor, the actions of this Debtor from November 2000 to June 2001 do not support such an inference. *See e.g. In re Coughlin,* 27 B.R. 632, 637 (1st Cir. BAP 1983); *Shawmut Bank v. Lyons (In re Lyons),* 153 B.R. 95 (Bankr.D.N.H.1993). The uncontested testimony of the Debtor was that in December 2000, she had one of her best months ever at the beauty salon. The Debtor employed eight to ten people. She was in the process of remodeling and expanding her salon. The majority of the credit card usage was to pay for that expansion. Between December and March,

she attempted to get additional credit, but was unsuccessful, including a request to Northeast. Only after failing to get additional loans did she file Chapter 13, which is consistent with an intent to continue the business. Finally, the termination of the business occurred as a result of the loss of three key employees. Debtor's intent to keep the business open was corroborated by the testimony of her former employee, Barbara Shaw.

Lastly, the time period of eight months between the request for an increase in credit to the use of the credit card in November and December 2000 further weakens the ability of this Court to find by inference the intent to deceive. The testimony revealed that for a significant part of that eight month period, the credit card had a zero balance. For all of the above reasons, the Court cannot find that Northeast has met its burden of proving the Debtor's intent to deceive.

## CONCLUSION

The Court finds that Northeast has not met its burden under § 523(a)(2)(B). Consequently, the complaint must be denied and judgment granted to the Debtor. This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate final judgment consistent with this opinion.